Case 6:23-cv-00057-NKM-CKM   Document 1   Filed 09/21/23   Page 1 of 11
Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/21/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

**VIRGINIA:**

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA**
(Lynchburg Division)

| | |
|---|---|
| **VERSANT HOLDINGS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **CENTRA HEALTH, INC.,** | ) Case Number: 6:23cv00057 |
| Serve: Alison Ferguson Gobble, | ) |
|   Registered Agent | ) |
|   1901 Tate Springs Road | ) |
|   Lynchburg, Virginia 24501 | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

Plaintiff Versant Holdings, LLC ("Plaintiff" or "Versant"), by counsel, hereby files its complaint against Defendant Centra Health, Inc. ("Defendant" or "Centra") for damages arising from Centra's material breach of its obligations under a November 2020 License Agreement with Versant. In support thereof, Versant alleges the following.

### Parties

1. Versant is a limited liability company organized under the laws of Delaware with its principal place of business in Las Vegas, Nevada. Versant has three members: Michael L. Carman, a citizen and resident of the State of Florida, Larissa A. Africa, a citizen and resident of the State of Nevada, and Momchil Penev, a citizen and resident of the State of Nevada.

2. Centra is a Virginia nonstock corporation formed under the laws of the Commonwealth of Virginia. Centra maintains a principal office in Lynchburg, Virginia.

1

## Jurisdiction and Venue

3. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this is a civil action where the matter in controversy exceeds $75,000 and is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (2).

5. Centra is subject to personal jurisdiction in this Court because it is a Virginia nonstock corporation, conducts business in Virginia, entered into (and breached) the contract at issue in this matter in Virginia, caused harm in Virginia, and consented to jurisdiction in Virginia pursuant to the applicable contract at issue in this matter.

## Facts

**Versant Holdings, LLC**

6. Versant provides training services to healthcare organizations by implementing a specialized and uniquely-designed integrated competency-based system for nursing professionals and measuring outcomes through a series of performance and process metrics. Versant has developed, relies on, and deploys empirically-based, data-driven processes to both improve and quantify a healthcare organization's workplace performance. By developing the nursing workforce's ability to provide safe, efficient, competency-based care, Versant fundamentally improves healthcare outcomes.

7. Versant's programing provides a comprehensive and systemic approach to (i) measuring and evaluating clinical competencies throughout a nursing professional's career, (ii) identifying and remediating competency gaps through further education, (iii) onboarding and transitioning nursing professionals into competent and confident practitioners, (iv) transitioning

experienced nurses into a new specialty area of practice, and (v) tracking outcomes to demonstrate, in real time, program return on investment and effectiveness.

8. For years, Versant's competency-based nurse training programs have been described as and considered the "gold standard" in the healthcare industry nationwide, and Versant meaningfully contributes to the integration and standardization of nursing workforce development across healthcare.

9. A critical and central feature of Versant's competency-based training system is its proprietary and copyrighted Versant Voyager web-based platform, by which Versant collects, analyzes, and automatically reports on outcomes data. Pursuant to licensing agreements, Versant provides its healthcare organization clients with access to Voyager, and in doing so, the client may access real-time data on all gathered assessments, metrics, and evaluations, and Voyager accurately demonstrates financial, quality, and safety outcomes in real time, proving the exact value of its competency-based system to the client.

**November 2020 License Agreement With Centra**

10. Centra is a healthcare system based in Lynchburg, Virginia, serving over 500,000 people as a main provider of critical medical services in central and southern Virginia.

11. Centra was in need of a competency-based training system, such as Versant Voyager, for its nurses, and reached out to Versant to obtain Versant's services. Centra did not, prior to working with Versant, have any credible nurse training competencies.

12. On November 13, 2020, Versant and Centra signed the Versant License Agreement, with an effective date of November 20, 2020, whereby Versant agreed to license to Centra a broad range of competency-based services, access to Voyager, and other training-related services, in exchange for Centra's payment of various licensing and other fees to Versant.

13. The Versant License Agreement contains three exhibits: (a) Centra's Requirements for Vendor Compliance; (b) the "Versant Services Contract" for the "Versant New Graduate Nurse Residency"; and (c) the "Versant Services Contract" for the "Versant Nurse Transition Fellowship." The Versant License Agreement, together with Exhibits A, B, and C constitute the "Agreement" between Versant and Centra. A true and accurate copy of the Agreement, with accompanying exhibits, is attached hereto as Exhibit 1.

14. The term of the Agreement commenced on November 20, 2020, and expires on October 31, 2025.

15. The Agreement calls for minimum payment and performance commitments from Centra to Versant under each Versant Services Contract. *See* Ex. 1, Exs. B, C.

16. Pursuant to the Versant Services Contract for the Versant New Graduate Nurse Residency, Centra's "Minimum Commitment" required Centra to pay Versant no less than $270,000 annually and to enroll not fewer than sixty new nursing graduates in the Versant New Graduate Nurse Residency during each year of the Agreement. *See* Ex. 1, Ex. B, Sections III and VI.

17. Pursuant to the Versant Services Contract for the Versant Nurse Transition Fellowship, Centra's Minimum Commitment is no less than $90,000 annually. Further, the Minimum Commitment provided that Centra agreed to enroll not fewer than twenty enrollees in the V Versant Nurse Transition Fellowship during each year of the Agreement. *See* Ex. 1, Ex. C, Sections III and VI.

18. The "Minimum Commitments" outlined in Exhibits B and C of the Agreement are just that: minimums. In the first year of the Agreement, from November 20, 2020, through November 19, 2021, for example, Centra enrolled 63 nurses in the New Graduate Nurse Residency

4

and 64 nurses in the Nurse Transition Fellowship, which exceeded the annual enrollment requirements under each program.

**Centra's Attempts to Extricate Itself from the Agreement**

19. On September 29, 2022, Caryn Brown, the Corporate Director of Continuing Education and Professional Development at Centra, and a main point of contact on behalf of Centra regarding the Agreement with Versant, posted on the "PTAP (Practice Transition Accreditation Program) Workshop Discussion Board": "I am looking for samples of 'home grown' learning needs assessments for Residents. Would any of you be willing to share? We are rebooting our program and looking to start fresh and departing from our current practice of using a vendor [sic] Any input would be appreciated." A true and accurate copy of Ms. Brown's September 29, 2022, posting on PTAP is attached hereto as Exhibit 2.

20. Versant was the only vendor with which Centra had a training program at the time, so the "vendor" referenced in Ms. Brown's post from which Centra was seeking to "depart" was Versant.

21. At no point prior to or at the time of Ms. Brown's September 29, 2022, posting on PTAP had Centra informed Versant that Centra was seeking any change in its contractual relationship with Versant, let alone starting "fresh" with a new vendor or "departing" from the Agreement.

22. Over two months after Ms. Brown's posting on PTAP, on February 7, 2023, Ms. Brown e-mailed Versant and stated, without any explanation or context, that "Centra has decided not to use Versant (in any capacity) for the February and March 2023 cohorts, so no training will be needed." (The term, "cohort," in this context typically refers to an incoming group of new nursing professionals.)

23. Two days later, on February 9, 2023, Centra, through Ms. Joan Deal, the then-Chief Nurse Executive of Centra, emailed Versant a "Notice of Breach of License Agreement" purporting to declare Versant in breach of the Agreement. However, nowhere in the "Notice of Breach" did Centra identify a single contractual obligation or provision under the Agreement that Versant allegedly violated, and thus, the "Notice of Breach" did not constitute a valid notice of default pursuant to Section 6.2.1 of the Agreement.

24. Centra's "Notice of Breach" also contained a series of factual inaccuracies which, ostensibly, were a pretextual attempt by Centra to achieve a publicly-declared business goal while avoiding its legal obligations to Versant by fabricating an alleged breach of the Agreement by Versant.

25. On March 8, 2023, Versant, by counsel, issued its response to Centra's February 9, 2023, "Notice of Breach." Versant (i) notified Centra that Versant did not recognize the February 9, 2023 letter as a valid notice of default pursuant to Section 6.2.1 of the Agreement, (ii) refuted the inaccurate and baseless claims advanced by Centra in the February 9, 2023, letter, (iii) reminded Centra of Versant's intellectual property rights under the Agreement and Centra's corresponding obligations thereto, both of which survive any termination of the Agreement, and (iv) informed Centra that if Centra sought to terminate the Agreement, Versant would treat any termination as a termination for convenience, obligating Centra to pay Versant termination fees pursuant to Section 6.2.5. of the Agreement.

26. In its March 8, 2023, response to Centra's "Notice of Breach," Versant also, expressly, sought written assurances from Centra that Centra intended to, and would, comply with its obligations under the Agreement related to the Versant Services (as that term is defined in the Agreement to include all of Versant's intellectual property licensed under the Agreement),

6

including providing proper assurances (a) that Centra would immediately, upon any termination, collect and return to Versant any Versant Services that were provided and (b) that Centra would not retain, use, or develop any copies of any Versant Services that were provided. Centra failed to provide such assurances.

27. Despite the threat in the February 9, 2023, "Notice of Breach" to terminate the Agreement, Centra did not issue a notice of termination when the thirty-day cure period expired.

28. Indeed, Centra never responded to, let alone refuted, the substantive facts and arguments raised by Versant in the March 8, 2023, response letter.

**Centra's Failure to Pay Invoices and Breach of the Agreement**

29. On May 22, 2023, in accordance with the Agreement, Versant issued Invoice Nos. 11466, 11467, and 11468 to Centra (the "Invoices."). True and accurate copies of the Invoices are attached hereto as Exhibits 3, 4 and 5.

30. Invoice No. 11466, in the amount of $90,000.00, represents the Minimum Commitment for Centra Program Year 2 (11/20/21 through 11/19/22) pursuant to the Nurse Fellowship aspect of the Agreement. Invoice No. 11467, in the amount of $207,000.00, represents the Minimum Commitment for Centra Program Year 3 (11/20/22 through 11/19/23) pursuant to the Nurse Residency aspect of the Agreement. Because Centra has already paid 14 of the 60 minimum commitments, Invoice No. 11467 represents the balance of the $270,000.00 that remains due and owing. Invoice No. 11468, in the amount of $90,000.00, represents the Minimum Commitment for Centra Program Year 3 (11/20/22 through 11/19/23) pursuant to the Nurse Fellowship aspect of the Agreement.

31. Invoice No. 11466 represents amounts already due and owing to Versant from Centra under the Agreement but which Versant had not invoiced until May 22, 2023. Invoice Nos.

7

11467 and 11468 were issued in accordance with Section 2.1.5.1 of the Agreement.

32. All of the amounts stated in the Invoices were fully accrued and owing under the Agreement as of the time that Versant issued the Invoices to Centra.

33. The total amount due and owing to Versant from Centra pursuant to the Invoices is $387,000.000.

34. Pursuant to the Agreement, Centra was obligated to make payment on the Invoices by not later than July 6, 2023.

35. Centra failed to make payment on the Invoices as required pursuant to Section 2.1.5.3 of the Agreement.

36. Centra's failure to pay the Invoices as required constitutes a material breach of the Agreement.

37. On July 7, 2023, in accordance with Section 6.2.1 of the Agreement, Versant issued a Notice of Breach to Centra for its failure to pay the Invoices. A true and accurate copy of the July 7, 2023, Notice of Breach is attached hereto as Exhibit 6.

38. On July 13, 2023, rather than acknowledging its breach of the Agreement and offering to cure that breach, Centra instead improperly issued a "Notice of Termination of License Agreement," purporting to terminate the Agreement "for cause" based on its inaccurate, deficient, noncompliant, and pretextual February 8, 2023, "Notice of Breach.".

39. Centra's bad faith attempt to terminate the Agreement is itself a breach of the Agreement.

**Versant's Notice of Termination of the Agreement**

40. On August 7, 2023, after Centra failed to cure its breach of the Agreement, as required under the Agreement, Versant issued its Notice of Termination for Cause Under Section

8

6.2.2 of the Agreement ("Notice of Termination"). A true and accurate copy of the Notice of Termination is attached hereto as <u>Exhibit 7</u>.

41. As a result, the Agreement was terminated as of August 7, 2023.

42. The Agreement provides that, in the event the Agreement is (i) terminated by Versant for cause due to Centra's breach under Section 6.2.2 or (ii) terminated by Centra for convenience under Section 6.2.4, then Centra must pay Versant a "Termination Fee."

43. Pursuant to Section 6.2.5 of the Agreement, the Termination Fee Centra is required to pay Versant is "equal to i) the difference between the number of Enrollees as set forth in the Minimum Commitment and the actual number of Enrollees enrolled for the remainder of the year in which the contract was terminated, multiplied by the Contract Level Pricing (as such term is defined in the relevant Versant Services Contract), plus ii) the Minimum Commitment multiplied by the Contract Level Pricing above for all remaining years under the Term." Ex. 1, § 6.2.5.

44. The Termination Fee is "in addition to any other legal or equitable remedies to which Versant is entitled." *Id.*

45. The Termination Fee Centra is required to pay Versant as of the date that Versant terminated the Agreement is $1,107,000.00.

46. Centra is obligated under the Agreement to pay Versant, and Versant is entitled under the Agreement to receive, $1,494,000.000, which is the total of the Termination Fee and the outstanding, unpaid Invoices, plus accrued and continuing interest.

47. Pursuant to Section 6.2.5, Centra had 45 days after the issuance of the Notice of Termination to pay Versant the Termination Fee, in addition to the other money due and outstanding from Centra to Versant, including the outstanding, unpaid Invoices.

48. Centra failed to pay all outstanding amounts to Versant within 45 days of the Notice of Termination, as required by the Agreement, and as demanded in the Notice of Termination.

## COUNT I
### (Breach of Contract)

49. Versant incorporates by reference paragraphs 1-48 as if fully restated herein.

50. The Agreement constitutes a valid, binding, and enforceable contract between Versant and Centra.

51. Pursuant to the Agreement, Centra had a legal obligation to pay invoices from Versant as they became due.

52. Pursuant to the Agreement, Centra had a legal obligation to pay Versant the Minimum Commitments as stated in Exhibits B and C of the Agreement.

53. Centra failed to make payment to Versant as provided in the Agreement.

54. Centra's failure to make payment to Versant constitutes a material breach of the Agreement.

55. Centra failed to cure its material breach of the Agreement despite notice from Versant demanding that payment be made.

56. Due to Centra's uncured material breach of the Agreement, Versant was entitled to, and did, terminate the Agreement for cause.

57. Centra failed to pay the Termination Fee, as well as the remaining outstanding balance due and owing to Versant pursuant to the Invoices, as required by the Agreement, and as demanded in the Notice of Default and Notice of Termination.

58. Centra has materially breached the Agreement by failing to pay Versant amounts due and owing under the Agreement, and Versant has been damaged by Centra's material breach.

59.     Versant is entitled to damages representing (i) the unpaid amount of the Invoices and (ii) the Termination Fee.

60.     Versant's damages under the Agreement are $1,494,000.000, plus interest.

WHEREFORE, Versant Holdings, LLC, by counsel, respectfully requests the following relief from this Honorable Court:

(a) An Order entering judgment in favor of Versant Holdings, LLC and against Centra Health, Inc. in the amount of One Million, Four Hundred Ninety-Four Thousand U.S. Dollars and Zero Cents ($1,494,000.00)

(b) Post-judgment interest at the rate provided by law; and

(c) Any and all further relief that this Court deems just and proper.

Dated September 21, 2023

Respectfully submitted,

*/s/ Stephen D. Caruso*
Charles F. B. McAleer, Jr., VSB No. 24430
Stephen D. Caruso, VSB No. 87376
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, Virginia 22201
Telephone: (703) 525 – 4000
Facsimile: (703) 525 – 2207
E-mail:     cmcaleer@beankinney.com
            scaruso@beankinney.com
*Counsel for Versant Holdings, LLC*

11